I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Kulbir Singh. When the board rendered its March 12, 2003 decision in this case upholding the immigration judge's denial of asylum, Mr. Singh was already eligible for adjustment of status. He'd entered this country on a B-1, B-2 visa. He'd married a U.S. citizen three and a half years before the board rendered its decision. He'd gone, his U.S. citizen wife had filed a petition for him, he'd gone through a DHS interview, and they had affirmed that the marriage was a bona fide one and approved the visa petition. Before the board rendered its decision, Mr. Singh had contacted a couple people that represented themselves falsely as lawyers. They claimed that they were lawyers and they were not. They submitted to the Board of Immigration Appeals an application for adjustment of status and a visa petition. But they did not submit to the Board of Immigration Appeals the DHS approval of the visa petition. So when the board rendered its decision, although they construed that submission as a motion to remand, they denied it saying that Mr. Singh had failed to prove the bona fides of his marriage by clear and convincing evidence or present an approved visa petition. But in fact, the visa petition had already been approved. So at that point, he had 90 days to make a motion to reopen. He contacted these individuals who were claiming to be attorneys. He paid them $1,200. They attempted to submit a motion to what they called a reconsideration motion, but it was really legally more akin to a motion to reopen. But they didn't address it properly. It doesn't appear that they had a proof of service. It's not clear that they had a filing fee. And although it made it into the government's file, it never made it into the board's file. Notwithstanding the fact that these individuals had paid them to do this work, if that had been accepted by the board, if it had been accepted, this case would have been remanded back in 2003. So it's clear that during the 90-day period that Mr. Singh had in which to make a motion to reopen, efforts were made by fraudulent schemers, really, individuals claiming to be immigration attorneys. Mr. Singh was clearly diligent during that period, but without success, not because of anything he did, but because of these fraudulent lawyers who told him, and this is on page 50, that all he needed to do was wait patiently and he would receive his green card. So clearly he was diligent during that period. In September of 2003, he got what's called a bag and baggage letter. This is a notice that he report for deportation. At that point, he went to see these two individuals who he thought were lawyers, and they basically told him to pack his stuff and leave the state. At that point, he began to realize, he says, these are not real lawyers. And at that point, he sought out the advice of another lawyer, Martín Reséndiz Guajardo, who is somewhat infamous in this court and in the Bay Area. He was suspended three times before he most recently resigned with charges pending, after resigning from this court as well with charges pending. Now, Mr. Guajardo repeatedly indicated to these individuals that he was going to cure the problems that had been created by Mr. Singh's former attorneys, but he didn't. He submitted what he called a joint motion to reopen, but it wasn't a joint motion to reopen. It was signed by Mr. Guajardo. It was not signed by DHS counsel. Mr. Guajardo's motion was denied. He filed a motion to reconsider, where for the first time he invoked some principles of equitable tolling. That was denied. He appealed that to the Ninth Circuit. So in August of 2004, when these individuals, Mr. Singh and his wife, came to my office, there were two appeals pending in this court, the denial of a motion to reopen that Mr. Guajardo had filed and a motion to reconsider. Now, we accepted this case in 2004. At that point, I was on vacation. Another lawyer in my office accepted this case, Sarnata Reynolds. I don't think Sarnata had any idea what was really going on here, frankly. So we have this gap between, I guess, November 2004, when you got the files, and April 8, 2005, when you filed the motion to reopen. Let's talk about that. What do I do about that gap? That's the key. Well, for starters, it's clear we didn't ---- Let me stop you for a moment about whether it's the key. I just reread the board opinion. Unlike in the other case where they did rely on that, I'm not sure the BIA relied on that. They seem to be concerned about the fact that they seem to think that your client should have discovered it earlier, but they don't say anything about the lawyers. That's correct. That's correct. Their reading of equitable tolling in this case, it's all about what the lawyer, it's all about what the client knew, not what the lawyer could have or should have known. And in response to your question, I think that's correct. I mean, if you go back and you look at the Garamani decision, it seems clear to me it's about what the client knew or should have known, not the lawyers. Because in that case, it's kind of an interesting thing. There were four lawyers involved. The fourth lawyer made a motion to reopen in that case, alleging that lawyer number one had been ineffective. By the time the case got to lawyer number four, there had been two other lawyers involved, and neither of those two lawyers had even caught the ineffective assistance of counsel. There were no claims of ineffective assistance of counsel brought against lawyers two and three, and yet this Court found that the individual had been the Petitioner in that case had been diligent in the first report of immigration appeals. Yes, Your Honor? Which case? Garamani. Okay. That case is right on point. If the government's correct that the lawyer's failure to catch these mistakes could be imputed to the client, Garamani would have lost. But Garamani did. Garamani won. But my point was that although the lawyers now, the government's lawyers, are taking that position, I don't think the BIA did. That's correct. I guess I'd like to know whether you think the BIA did. I agree with your reading of the BIA's decision. But going back to your question there, Judge Akuta, we didn't get the file in this case until sometime in November of 2004. Our opening brief was originally due December 13th of 2004. We asked for a couple extensions because we had other pressing matters. The brief became due in January of 2005. By then, we had reviewed the file. That was really the first thing happening in the case by which we had the obligation to really review the file and get something filed. I know you rely on our granting extensions, but that's clearly on a different standard than whether you're showing due diligence or not. I mean, we freely grant those. Well, again, I think you're confusing whether the client is the client who has to be due diligent. The Lariano, which seems to indicate that the – and also Itubaria says at least the time runs from when the new attorney got the file. No. So as long as the attorney is not being identified as being ineffective, then it seems that the attorney's lack of due diligence is imputed to the client. You're misreading Itubaria, because what Itubaria says is not when the lawyer receives the file, it's when the lawyer receives the file and meets with the client and explains the client in a definitive way that there's been an ineffective case. It does say that, and then it also says, but at least from the time when the new lawyer gets the file in a footnote. Well, I would beg to differ on your reading on that, but in this case, even if you were going to say that the issue here is whether the lawyers are being due diligent, duly diligent, there's no way you could say that our office was not being duly diligent. Again, we got the file in November of 2004. Our brief did not become due until January of 2005. By the time we took this case, it's important to recognize what was the procedural posture. There were two cases on appeal in the Ninth Circuit, and the period for making any motion to reopen had long since passed. We weren't thinking about motions to reopen. We were thinking about Ninth Circuit appeal. And so we were thinking about when is our Ninth Circuit brief going to become due when, in the period prior to that due date, obviously we were looking at the file, we're working it up, and it's at that point that we discovered there's rampant ineffective assistance of counsel here. Now, the board says... Do you think you count back from when the brief is due, the appellate brief is due? No. And that's when you determine when you should be... No. As I understand your formulation here, you're looking at were the lawyers duly diligent. And I'm saying you've got to look at the context here. The context is we were representing somebody with regard to a Ninth Circuit appeal. We were duly diligent in complying with all the deadlines with respect to that  discovered that there was ineffective assistance of counsel. And I've got to tell you, this is normally the way it's going to work. I mean, if you're going to say that the lawyers have an obligation as soon as they get the administrative record to be reviewing that and meeting with clients about potentially, potential motions to reopen for which deadlines have long since passed and they're going to be claiming equitable tolling, all kinds of people are going to be losing out on valid motions to reopen because lawyers just aren't going to be doing that. I guess I don't really understand that because, at least in my practice, when I was in private practice, if there was a statute of limitations running, it didn't matter whether you – whether the lawyer caught it or didn't catch it because they were preparing a brief. I mean, you had to evaluate the file and determine whether there was a statute of limitations. Alito You're missing the point. The statute of limitations in this case had long since passed when we took the case. Ginsburg Right. But the question that the BIA is asking is whether the lawyers who got the file were diligent in looking for evidence of ineffective assistance. And they said, no, it wasn't. And I'm having trouble seeing why that was irrational. Alito That's not what the BIA said. That, you know, as Judge Berzon points out, that's not the basis of the board's decision. The board's decision is the client should have understood more quickly. And they're faulting the client for not recognizing the IAC at an earlier date. Ginsburg And I also see that in our equitable tolling cases, we impute the competent lawyer, or if the lawyer is not being identified as incompetent, the current lawyer, their activities to the client. So that's where it gets hung up on us. Alito No. Again, on that point, Your Honor, you're just wrong because Garamani is right on point. Garamani is a case that we handled on appeal in the Ninth Circuit. And I'm telling you that there were no IAC claims against the intervening second and third lawyers in that case. And notwithstanding that, Judge Tallman's decision holds quite clearly that the client exercised due diligence, notwithstanding the fact that lawyers two and three didn't raise any ineffective assistance for counsel. Ginsburg But there wasn't a current competent lawyer in that case where I think in Valeriano there was. Alito Yeah. I wish I had some time left, and I wonder if I might have one minute to respond to the government in rebuttal. Ginsburg Yes, you may have one minute. Alito Thank you, Your Honor. Ginsburg Thank you. Roberts Good morning. Steve Day for the Department of Justice. We're again dealing with an issue of due diligence. In this particular case, the alien had two opportunities to exercise due diligence. First, with the Romdarens. The Romdarens were a couple that purportedly were, held themselves out to be lawyers. Ginsburg My understanding is that as soon as he realized that they weren't really lawyers, he went and hired a lawyer. Alito That's right, because he was suspicious of their activities. Ginsburg Okay. Alito Hired a lawyer, Gallardo, became suspicious of his activities and hired current counsel. That was in August of 2004, I believe. August of 2004. Ginsburg Unlike in the other cases, it doesn't appear to me that the BIA was concerned about, maybe it should have been, but it doesn't appear that it was, with the diligence of the last lawyer. Instead, the basis for concluding that the Mr. Sink had not been diligent was that he didn't notice that there wasn't a joint motion and that by Mr. Gallardo, he hasn't shown his inability to learn of the fact, and that he didn't exercise due diligence in including such vital information bearing on the existence of the unaffected assistance of counsel claim. So they didn't seem to have a problem with Mr. Job's office's diligence, maybe because of the points Mr. Job is making, which is they did, in fact, deal with it at the time when it was reasonable, given their briefing schedule. But putting that, whether that's true or not, it isn't what the BIA said, unlike in the other case where they were directly involved, concerned about the diligence of the ORIC firm. Alito All right. I'm reading from the BIA decision that says they're now persuaded that the Respondent can claim that he was unaware of the ineffectiveness prior to the meeting with Mr. Job on March 6th, 2005. That's because Mr. Job came aboard in August of 2004. They may have made an error in the day. Because it appears that Respondent failed to exercise due diligence in notifying counsel of the information. In other words, their problem is that the lawyer, Mr. Sink should have told Mr. Job what had happened earlier. But the problem is that the client didn't know what had happened earlier. All he knew is that he didn't feel he was being represented properly. Well, as this Court has held, subsequent to these cases, and this is a case brought up in the 28J letter by counsel, another Sink, Hardeep Sink v. Gonzales, it does put a burden on the Petitioner to act with due diligence to definitively learn of the ineffective assistance after he becomes suspicious of it. And hiring a new lawyer isn't good enough? Not necessarily, no. Especially when he had suspicions of the previous two counsels. I mean, I understand that in the ideal world, perhaps Mr. Sink, and I don't know how good his English was, is would have read the joint motion and read the BIA's opinion and looked at the footnote in the BIA opinion, which did not say Mr. Guardo lied about whether there was a joint motion. It just said there wasn't a joint motion, and then put two and two together and figured out that Mr. Guardo was lying, but it doesn't seem like a lack of diligence in a layperson who probably doesn't speak that good English not to have done that. Still, the obligation is on him to proceed as a juror. So you're saying he should have done that and that's the problem? Yes. Okay. That's the government's position. He wasn't duly diligent because he didn't figure out that Guardo had lied about filing a joint motion. He wasn't due diligent because he was suspicious of Guardo, which is why he hired Mr. Job. Exactly. He went and did something about it. He went to hire Mr. Job. And then did not definitively follow up. And then didn't tell Mr. Job what he didn't know. I mean, that's what the BIA said. He should have notified the counsel of this information, but he didn't know it. But they did know it by November 1st when they got the administrative record. And again, they're running into the 90-day problem. That motion to reopen was not filed until April, over four months later. Okay. Anything else? There's nothing else. Thank you very much. We'll give you one minute, Mr. Job. The Board's focus on the joint motion to reopen and whether it was actually a joint motion I think is a little off the mark here. Because the mere fact that this was not, in fact, a joint motion, it really doesn't help us prepare a motion to reopen based on ineffective assistance of counsel. Because we have to come back to prejudice. Well, if the government wasn't going to join the motion, what's the prejudice in Mr. Guardo filing a motion that was unsigned by district counsel? Ultimately, the issue here, the IEC, was that Guardo didn't make an equitable tolling argument. Not that he just submitted this, you know, thing called the joint motion. He said he made no argument based on tolling. We wouldn't have known that until we had the opportunity to review the file. And, again, Your Honor, I mean, this is our point of disagreement here. We didn't have any reason to really begin reviewing the file, given that any motion for to deadline for a motion to reopen had long since passed until our brief was due. We were diligent in pursuing our responsibility here, which were to this court, in appealing to, you know, filing a brief on time to the Ninth Circuit. And in the course of that, we discovered this ineffective assistance of counsel that Mr. Guardo had not made a tolling argument when there was a compelling tolling argument to be made. And based on that, I think the Court has to find that. Kagan. Let me ask you again in terms of the prior case, in terms of the practicality. Mr. Singh has an approved condition. Right. If he is deported, what happens? He goes back to India? You know, in the best – if he's deported, he will be subject to multiple bars on reentry. He'll be subject to a 10-year bar on reentry for having been deported. He'll be subject to another 10-year bar from – on returning to the United States for having been unlawfully present in the United States for more than a year and then departing. He'll need at least two waivers to come back. Same with that last case. It's not like he's just going to get on a plane and get a visa and come back here. In the best case, if he's able to get those waivers, he will be in Delhi for the next two, two and a half years, if he gets the waivers. But in my 20 years of doing this, the waiver thing is relatively new. It goes back to 1996. But since 1996, I've had one client come back from India, one, with the required waivers. It's not as easy as the government's telling you that he's just going to go get a visa and come back. It just doesn't work that way. Okay. Thank you very much. The case of Singh v. Holder is submitted.
judges: Noonan, Berzon, Ikuta